IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| CITY OF MURFREESBORO, TENNESSEE, | ) |
| Plaintiff, | ) Case No. 3:23-cv-00654 |
| | ) JUDGE RICHARDSON |
| v. | ) |
| BFI WASTE SYSTEMS OF TENNESSEE, LLC, | ) |
| and REPUBLIC SERVICES, INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER TO REMAND

This case was originally filed by Plaintiff in the Chancery Court of Rutherford County ("Chancery Court"), Tennessee, as that court's Case No. 23 CV-1203. On June 27, 2023, Defendants jointly filed a notice of removal in this court (Doc. No. 1).

Plaintiff then filed a motion to remand this case to Chancery Court (Doc. No. 26, "Motion"), supported by an accompanying memorandum (Doc. No. 26-1). Defendants filed a response in opposition (Doc. No. 32, "Response"), and Plaintiff filed a reply.

PROCEDURAL BACKGROUND, AND ALLEGATIONS IN THE COMPLAINT

In their Response, Defendants provide a summary of the procedural background to the Motion, and the allegations of Plaintiff's complaint. The Court is content to accept Defendants' summary for present purpose, except insofar as the summary includes certain loaded terms and unsupported accusations that the Court does not accept as true (while not necessarily declaring as untrue in all respects, either) that are immaterial in any event and thus have been excised as reflected by ellipses:

> Defendant BFI Waste Systems of Tennessee ("BFI") owns land in Rutherford County, Tennessee known as Parcel ID 046-034.03.00 (the "Landfill" or "Middle Point Landfill"), and Rutherford County, Tennessee owns adjacent

property to the south known as Parcel ID 046- 033.01-000 (the "County Parcel"). Middle Point Landfill lies between Rutherford County's Parcel and Jefferson Pike. Rutherford County acquired its Parcel in 1994 from the Matthews family by Warranty Deed. *See* ECF No. 12-1. The Warranty Deed granted a "50' right-of-way for ingress/egress to and from Jefferson Pike to the beginning point of the [County Parcel] and thereafter a 25' right-of-way for ingress/egress." *Id*. at 2-3. At the time the right-of-way was granted, the County Parcel was utilized for disposal of construction and demolition debris. *See* ECF No. 12-2 at 2 (showing a depiction of the easement area). The right-of-way is commonly referred to as Landfill Road. Defendants have never interfered with the County's ability to access its County Parcel, and there have never been any problems or complaints on the use of Landfill Road. It was only recently that the City has stirred up litigation to claim a right to access the Landfill via Landfill Road in order to observe the Landfill's operations and evaluate the Landfill's odors and discharges, and ultimately, declare it a public road.

The present case is an extension of an ongoing dispute between Plaintiff and Defendants regarding, among other things, alleged odors and air emissions emanating from Middle Point Landfill. On August 10, 2022, Plaintiff filed a related lawsuit, Case No. 3:22-cv-00605, against Defendants in the United States District Court for the Middle District of Tennessee, Nashville Division. Through numerous iterations of amended and supplemental complaints, Plaintiff's related 2022 lawsuit asserts causes of action for public and private nuisance, negligence, violations of the federal Clean Water Act, violations of the Clean Air Act, and breach of contract against Defendants. *See* ECF No. 70, Pltf.'s First Supp. Compl., City of Murfreesboro v. BFI Waste Systems of Tennessee, LLC, et al., Case No. 3:22-cv-00605 (M.D. Tenn. Mar. 15, 2023). In the related lawsuit, the parties are actively engaged in discovery and have a number of pending discovery disputes, one of which is a dispute concerning access to Landfill Road—a private road adjacent to Middle Point Landfill. Specifically, the parties are engaged in ongoing negotiations for a stipulation for joint sampling of Landfill, City, and County properties, which involves access to Landfill Road for the City's sampling efforts. On June 22, 2023, rather than initiate this discovery dispute in its pending lawsuit, Plaintiff filed this action in the Chancery Court for Rutherford County, Tennessee, Case No. 23CV-1203, seeking a Declaratory Judgment and Temporary Restraining Order as an impermissible end run around the federal district court's authority to resolve the discovery dispute regarding access to Landfill Road. Plaintiff requests in its Complaint that it needs to access Landfill Road to observe possible sources of gases and odors and the area in which a fire had occurred in 2022. ECF No. 1-2, Compl. at ¶ 1, n. 2. In its claim for declaratory relief, Plaintiff requests that the court declare that Landfill Road is accessible to and open for use by the public. ECF No. 1-2, Compl. at ¶ 7. Plaintiff asserts in its Motion for Remand that Landfill Road has long been used by the public daily for a variety of reasons. ECF No. 26 at 2. However, only Rutherford County has a right-of-way on Landfill Road for ingress/egress to access its parcel for trash disposal during the times that the County Landfill is open to the public. Landfill Road is a private road that runs adjacent to the Middle Point

> Landfill. Plaintiff's requested relief to declare Landfill Road a public road would act as a taking or condemnation of BFI's private property—the value of which exceeds $75,000. See Exhibit A, Declaration of Clay Cassidy, MAI at ¶ 4; see Exhibit B, Appraisal Report for Proposed Taking of Landfill Road at 9, 57-59.I
>
> On the same day Plaintiff filed its Chancery Court Complaint against Defendants, Plaintiff raced into court to obtain an ex parte temporary restraining order, without providing notice to Defendants. Defendants deny that Plaintiff is entitled to any of the relief sought in its Complaint and do not waive any defenses with respect to any of Plaintiff's claims. Considering the ongoing efforts to negotiate a joint sampling plan and pending discovery disputes in the related 2022 lawsuit, Plaintiff filed this action in the Chancery Court . . . . Defendants timely filed their Notice of Removal on June 27, 2023 on the basis of diversity jurisdiction.

(Doc. No. 32 at 2-5).[1] The Court notes that it perceives that Defendants are imprecise in stating that the "right-of-way is commonly referred to as Landfill Road," (*Id.* at 3), a statement that suggests that the ROW *is* Landfill Road itself. But it appears to the Court that under Tennessee law, a "right-of-way is an easement."[2] *Dixon v. Chrisco*, No. M201800132COAR3CV, 2018 WL 4275535, at *5 n. 10 (Tenn. Ct. App. Sept. 7, 2018) (citing *Nashville, C & S.L. Ry. v. Bell,* 39

---

[1] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page ___ of ___") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

[2] As *Corpus Juris Secondum* puts it (albeit without reference to Tennessee law in particular):

> A right-of-way is an easement to pass or cross the lands of another,[1] an easement of perpetual use,[2] or a right to pass over another's land more or less frequently according to the nature of the use to be made of the easement.
>
> Generally, the terms "easement" and "right-of-way" are regarded as synonymous.[4] The term "right-of-way" generally signifies an easement in the absence of special circumstances indicating a contrary meaning.[5] A right-of-way is only a servitude imposed on land and fee remains in the owner of the property.[6] It is usually the term used to describe the easement itself or the strip of land which is occupied for the easement,[7] and is an interest in land.

28A C.J.S. Easements § 10. As indicated in the last sentence here, Defendants are hardly alone in referring to a right-of-way in terms of the strip of land that is occupied for the easement, rather than (per precisely) the right to use (cross) such strip of land.

S.W.2d 1026, 1028 (Tenn. 1931)); *Smoky Mountain R. Co. v. Paine Oil Co.*, 496 S.W.2d 904, 910 (Tenn. Ct. App. 1972) (noting that the Tennessee Supreme Court had stated that "'right of way' means mere easement'") (citing *Baird v. Southern Ry.*, 179 Tenn. 366, 166 S.W.2d 617 (1942)).[3] Defendants' apparently incorrect suggestion that the ROW is Landfill Road itself fosters some of the confusion that the Court discusses and attempts to dispel in a footnote below. As further discussed in the footnote, this observation is relevant and significant here; it means that in seeking to have the ROW declared to extend to the benefit of the public at large (which is essentially what Plaintiffs are doing, as discussed below), Plaintiff (despite itself fostering confusion on this issue, as also noted in the footnote) is not seeking a declaration affecting ownership of Landfill Road or, for that matter, Defendants' right to use Landfill Road.

REMOVAL GENERALLY, AND STANDARDS ON MOTION TO REMAND

A defendant generally may remove "any civil action brought in a State court" to the federal district court covering the place where the state-court action was brought, if a federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a); *Meadows v. Douglass*, No. 3:20-cv-00355, 2020 WL 2319784, at *1 (M.D. Tenn. May 11, 2020).

The party removing the action to federal court bears the burden of showing that the district court has original jurisdiction over the action. *Watson v. Cartee*, 817 F.3d 299, 303 (6th Cir. 2016); *Schmidt v. PennyMac Loan Servs., LLC*, 106 F. Supp. 3d 859, 873 (E.D. Mich. 2015).

---

[3] On the other hand, the Court could be wrong about this. *Whitehead v. Rout,* No. W2000-01239-COA-R3CV, 2001 WL 846062, at *3 (Tenn. Ct. App. July 26, 2001) (rejecting view that "right-of-way" and "easement" are synonymous). But to the extent that there is some dispute in this case as to whether the ROW possessed by the County refers to an easement over property of defendants rather than ownership rights the County possesses to the exclusion of Defendants, Tennessee state courts would be a preferable place to resolve that dispute anyway. The Court hastens to add, however, that its decision on this Motion is not governed by whether the Court thinks state court or federal court is the preferable place for this action.

Because they implicate federalism concerns, removal petitions are strictly construed, with all doubts resolved against removal. *Gooden v. Unum Life Ins. Co. of America*, 181 F. Supp. 3d 465, 470 (E.D. Tenn. 2016); *Hughen v. BHG Nashville #1, LLC*, No. 3:20-cv-00236, 2020 WL 2557961, at **3–4 (M.D. Tenn. May 20, 2020). All of this is to say that, unlike with various other kinds of motions, on a motion to remand the non-movant starts out in an unfavorable position.

There are two basic types of subject-matter jurisdiction:[4] federal-question jurisdiction and diversity-of-citizenship (also known as simply "diversity") jurisdiction. 28 U.S.C. §§ 1331, 1332. Defendant here has premised removal on diversity jurisdiction. Diversity jurisdiction exists when the plaintiff presents a claim between parties who are citizens of different states and the amount in controversy on that claim exceeds $75,000. *See* 28 U.S.C. § 1332(a). Where appropriate, a case may be removed to federal court based on diversity jurisdiction, just as with federal-question jurisdiction. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83–84 (2014). But the "party who removes a case to federal court bears the burden of establishing 'that the allegations in the complaint . . . satisfy the amount-in-controversy requirement.'" *Kunkel v. CUNA Mut. Ins. Soc'y*, No. 2:11-CV-492, 2011 WL 5282678, at *2 (S.D. Ohio Nov. 2, 2011) (quoting *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.,* 567 F.3d 767, 769–70 (6th Cir.2009)). And to put it slightly more specifically, "[t]he burden is on the removing party 'to show by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount-in-controversy requirement.'" *Adelman's Truck Parts Corp. v. Jones Transp.*, 797 F. App'x 997, 1000 (6th Cir. 2020) (quoting *Northup Props.*, 567 F.3d at 769–70). "To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most

---

[4] The instant Motion implicates only issues of subject-matter jurisdiction, and not personal jurisdiction, and so the Court limits its discussion herein accordingly.

favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Numerous other courts have stated that, as strongly suggested by the Sixth Circuit, "[w]hen deciding a motion to remand, the Court accepts as true the complaint's allegations at the time of removal." *Roberts v. Smith & Wesson Brands, Inc.*, No. 22-CV-6169, 2023 WL 6213654, at *1 (N.D. Ill. Sept. 25, 2023); *accord*, *e.g., Jamison v. Kenneth M. Levine & Assocs., LLC*, No. CV 5:22-01829-MGL, 2022 WL 10067539, at *2 (D.S.C. Oct. 17, 2022) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1163–64 (5th Cir. 1988)). And the Court agrees with those numerous courts that have noted that when considering a motion to remand, the district court not only accepts as true all relevant allegations contained in the complaint but also construes all factual ambiguities in favor of the plaintiff. *E.g.*, *Wilkinson v. Jackson*, 294 F. Supp. 2d 873, 877 (S.D. Miss. 2003) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1163–64 (5th Cir.1988)).

## ANALYSIS

As Defendant correctly notes, "Plaintiff does not dispute the citizenship aspect of this Court's diversity jurisdiction, but instead seeks remand based on the amount-in-controversy requirement alone." (Doc. No. 32 at 5). Plaintiff asserts that

> the amount in controversy based on the City's complaint is of minimal, if any, monetary value. The City pled no monetary damages, and the relief sought is injunctive and declaratory only. The right sought to be protected is the City's use of a road in the same manner as the rest of the public and the City's statutory right [footnote omitted] to injunction against any person harassing government employees. Common use of the road, not ownership, is all that is at issue in the state court complaint.

(Doc. No. 26-1 at 1). The complaint is relatively detailed in its allegations that the ROW is enjoyed by the public at large; for example, it alleges that the Rutherford County Landfill is open to the public and is accessible only by Landfill Road. (Doc. No. 1-2 at 2). It also alleges that "[Rutherford] County was conveyed the ROW by Deed and that the public uses the ROW every day." (*Id.* at 3). The complaint also alleges that Landfill Road is maintained by Rutherford County. (Doc. No. 1-2 at 3).

As Plaintiff sees it, Defendants claim that "the amount in controversy is met due to a theoretical loss of *their* rights, which they valued at exceeding $75,000.00." (Doc. No. 26-1 at 2). This is to no avail, according to Plaintiff, because "[c]ase law in the Sixth Circuit is well settled that, even if Defendants had presented a counterclaim, Defendants' damages are not considered in meeting the jurisdictional minimum for a case in controversy [, and] [t]he minimum must be met based only on the plaintiff's complaint." (*Id.*).

In their Response, Defendants claim that Plaintiff is off the mark because "courts in the Sixth Circuit look to the value of the object of the litigation to determine the amount in controversy," (Doc. No. 32 at 1-2),[5] and because the court does not view the amount in controversy from the plaintiff's perspective but instead determines whether it is more likely than not that the object of the litigation exceeds $75,000. (*Id.* at 2). In the present case, according to Defendants, it is indeed more likely than not. Defendant reasons as follows:

> Here, Plaintiff seeks a declaratory judgment to declare that Landfill Road is a public road, accessible to and open for use by the public. Landfill Road is a private road that runs adjacent to Middle Point Landfill. If Landfill Road is declared a public road, this would effectively constitute a taking or condemnation of Defendants' private property, the value of which exceeds $75,000. Moreover, if

---

[5] Defendant is correct in stating this principle and implying that it applies in the particular kind of case here at issue. *See Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 381 (6th Cir. 2023) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

> Landfill Road became a public road, this would cause significant business interruptions to Defendants' operations and significant financial losses. The value of Landfill Road and the costs of Defendant's business interferences "more likely than not" exceed $75,000, and Defendants have carried their burden under 28 U.S.C. § 1332(a).

(*Id.*). That is, Defendant claims that "the value of the right that the City is seeking to enforce includes the conversion of Landfill Road from a private road to a public one and the consequences of Landfill Road becoming a public road, which 'more likely than not' exceed $75,000." (*Id.* at 13). Defendants also claim an amount in controversy greater than $75,000 from the above-referenced alleged significant financial losses and business interferences:

> If BFI loses access to Landfill Road, it will effectively compromise access to the soil borrow stockpile and would require BFI to either construct another means of access to the current soil borrow stockpile or bring in soil from another offsite location. In cases where the value of land is at issue, the Sixth Circuit has upheld a district court's consideration of the costs to develop the land to calculate the amount in controversy. Similarly, the cost of moving the Landfill's soil borrow stockpile to its property from the neighboring property where it is currently stored would cost an estimated $225,000—far exceeding the statutory requirement.

(*Id.* at 10-11) (citation omitted). Notably, here (and elsewhere, *e.g., id.* at 4), Defendants rely on declarations they have filed in order to support their view of the amount in controversy. As noted by *Crowe*, the Court *may* (not to say *must*) consider such documents, and the undersigned would be inclined to do so if they tended to specifically refute some particular material allegation(s) in the plaintiff's complaint. In the present case, though, the Court does not see where Defendants' declarations do this; for example, the Court does not believe that anything in Plaintiff's Complaint is inconsistent with the assertion that Landfill Road is worth more than $75,000, or that moving the soil stockpile would cost more than $75,000. And ultimately the declarations on which Defendants rely are immaterial because, as discussed below, they do not serve to contradict the below-referenced allegations in Plaintiff's Complaint that, in the Court's view, are dispositive on the instant Motion.

In its Reply, Plaintiff argues that

> Defendants' response brief focuses on the amount in controversy entirely from their perspective, not the Plaintiff's, and fails in this regard by not explaining how an order allowing the City to use Landfill Road without the threat of a trespass prosecution, and in the same manner as the public, suddenly produces "condemnation or a taking" of the road, or a "substantial interference with operations." (Doc. 32 at 10). For all these years since Rutherford County has owned this right of way ("ROW"), none of these dire and expensive consequences have been produced by the use of this right of way ("ROW") by the County or the use by the public. Defendants admit that they "have never interfered with the County's ability to access its County Parcel, and there have never been any problems or complaints on the use of Landfill Road." (Doc. 32 at 3) (emphasis added). In fact, the public access is exceptionally light ("3-4 cars" in 15-20 minutes, Doc. 1-2 at 27, ¶8). Defendants' appraiser's report includes a photo of the road depicting a lonely stretch with no vehicles or heavy equipment, and no signs or gates. (Doc. 32-2 at 2). Defendants admit that the singular problem arose when the City "stirred up" litigation. (*Id.*). These admissions belie Defendants' contention that the object of this litigation is anything other than establishing the City's right to use the ROW in the same manner as the public, not a taking of Defendants' property.

(Doc. No. 33 at 1-2). Plaintiff further argues:

> [T]aking Defendants' property is not the object of this litigation and the City claims no relief that could result in a taking. If successful, the City merely regains the periodic use of the road. (Doc. 1-2 at 3). The City's use without threat of prosecution for trespassing cannot produce a change in ownership any more or less than the public's ongoing use could produce that result. Furthermore, the ROW or easement belongs to the County, not the Defendants, and the City cannot take the County ROW simply by using it with the same permission granted the public.
>
> As to Defendants' valuations for the cost of moving their soil pile or finding a new one, Defendants do not explain how this dire and expensive consequence never arose during years of public use but will suddenly arise from the City's continued limited use. In all their arguments Defendants fail to demonstrate how the City's use affects any portion of the road in a manner different from the existing burden imposed by public use.

*(Id.* at 2).

The Court first notes that one does not have to view the object of the litigation from Defendants' perspective (the appropriateness of so doing the Court ultimately need not determine) to conclude that the object the litigation is not as narrow is Plaintiff claims in its briefing. In its

complaint, alleging that the County was conveyed the "ROW" by Deed and that the public uses the ROW every day, Plaintiff seeks: (a) a declaration "that Landfill Road is accessible to and open for use by the public and that Defendants have no right to interfere with a public road"; and (b) injunctive relief "against any person harassing a municipal employee" and to "[a]llow [Plaintiff's] agents to return to any use of Landfill Road without the threat of involving law enforcement."[6] (Doc. No. 1-2 at 5). So Plaintiff has asked not just that *it* be allowed to use Landfill Road without harassment or interference, but rather that the Court declare "that Landfill Road is accessible to and open for use *by the public* [including Plaintiff] and that Defendants have no right to interfere with a *public road*." (*Id.*) (emphasis added).[7]

But the next question is what Plaintiff *really* means when it asks for a declaration that Landfill Road is a public road. In context, it is clear that what it is asking for is a declaration that

---

[6] The latter request is made only with respect to a "restraining order," and not a final and permanent injunction, and yet in context the request does seem to be something that Plaintiff would want perpetuated via a final and permanent injunction.

[7] The complaint in places fosters confusion by seeming to assert that Defendants have *no* rights in Landfill Road beyond those possessed by the public as a whole—*i.e.*, that Landfill Road is a "public road" in that it is "owned" by the County. (Doc. No. 1-2 at 4).
    But the relief that Plaintiff requests (i.*e.*, the object of this litigation) requires no judicial declaration that this is the case and could instead be based equally well on the notion that Landfill Road is a "public road" in the sense that it has been impliedly dedicated to public use. As Plaintiffs put it, "the object of this litigation is [not] anything other than establishing the City's right to use the ROW," (Doc. No. 33 at 2), and this can be accomplished without a declaration that Rutherford County is (to the exclusion of Defendants) the owner of Landfill Road. As Plaintiffs further put it, "when asking for a declaration that Landfill Road is open and accessible to the public, [Plaintiff] is referring to the ROW, not Defendants' underlying ownership." (*Id.* at 3).
    In any event, it seems that ultimately Plaintiff realizes that what the County has (the ROW) is not *ownership* of Landfill Road, but rather an easement over Landfill Road. (*Id.* at 2) ("Furthermore, the ROW *or easement* belongs to the County, not the Defendants . . . .") (emphasis added). That is to say, despite its unfortunate reference to Rutherford County owning Landfill Road by virtue of having the ROW, Plaintiff seems to realize that as discussed above, a right of way is not a road itself (or ownership of the piece of land on which the road sits) but rather a right (or "privilege") to *use* a roadway. The upshot is that what the complaint really seem to be asking for (alas, with less than ideal clarity is a declaration that the right to *use* Landfill Road extends not only to Rutherford County but to the public at large (including Plaintiff).

Landfill Road has been implicitly dedicated to public use. "[W]hen an implied dedication to public use is established the owner of the property retains fee simple ownership to the property subject to the easement vested in the public to use the land for purposes for which it was dedicated." *Johnson v. City of Selmer*, 1993 WL 310368, at *3 (Tenn. Ct. App. Aug. 17, 1993) (citing Tennessee Jurisprudence *Dedication* § 3 (1993)).[8] This means that Defendants "could be the fee simple owners of the right-of-way but not entitled to exclude the public from using it." *Id.* But the party asserting that a right-of-way has been dedicated to the public "must show that there was an offer of dedication and a public acceptance of the offer." *Id.* at *4. Notably, "[t]he offer of dedication and the public acceptance may be expressed or implied." *Id.*

> The proof on the issue of intent to dedicate must be unequivocal but intent may be inferred from surrounding facts and circumstances, including the overt acts of the owner.
>
> Among the factors which indicated an intent to dedicate are: the landowner opens a road to public travel; *acquiescence in the use of the road as a public road; and the fact the public has used the road for an extended period of time.* While dedication is not dependent on duration of the use, extended use is a circumstance tending to show an intent to dedicate. Finally, an intent to dedicate is inferrable when the roadway is repaired and maintained by the public.
>
> An offer of dedication must be accepted before a dedication to public use is complete. "Public acceptance of an offer of dedication may consist of either a formal act on the part of public authorities or common use by the general public.

(*Id.*) (citations and internal quotation marks omitted) (emphasis added). Construing Plaintiff's complaint in its favor as required, the Court believes that Plaintiff is asserting—plausibly, based on the facts alleged in the complaint—that Landfill Road has impliedly been dedicated to public use, and *that a court should declare this to be the case and enjoin interfering behavior inconsistent with this being the case.* Plaintiffs' assertion naturally is supported—though not necessarily

---

[8] The Court recognizes that *Johnson* is unreported, three decades old, and not from the Tennessee Supreme Court. And yet the Court is satisfied that it accurately reflects current Tennessee law.

entirely established—by the notion that the County (a public body) has an ROW, meaning in the Court's view an express easement over Landfill Road.

What the Court has placed in italics immediately above is plainly the object of this litigation, whether such object is ascertained from Plaintiff's perspective or Defendants' perspective. The question is whether Defendants have met their substantial burden to show that the amount placed in controversy by this object exceeds $75,000. The initial problem for Defendants is that the court must treat the allegations of the complaint as true, and those allegations indicate that the requested declaration and injunction (a) would not change anything about how things actually have worked on Landfill Road for some time; and (b) would not be any metaphorical skin off of Defendants' nose (and instead would be the metaphorical nothingburger), given the way things already work on Landfill Road (Doc. No. 1-2 at 2-3). For this reason, Plaintiff's complaint does not indicate that the amount in controversy exceeds $75,000—and this would be true even if the Court assumes that the amount in controversy amounts to *something*.

Asserting otherwise, Defendants rely on two declarations (and an attachment to one of those). The Court will assume arguendo, despite its doubts expressed above, that it is appropriate to consider these documents on the instant Motion. But the documents do not help Defendants because they are based on the assumption that the object of the litigation—which the Court accepts would constitute *a* taking of Defendants' property as Defendants claim but Plaintiffs dispute—[9]as if it is a *complete* taking of their property, rather than the limited one contemplated by *Johnson*, wherein "the property retains fee simple ownership to the property subject to the easement vested

---

[9] *See, e.g.*, *Garneau v. City of Seattle*, 147 F.3d 802, 809 (9th Cir. 1998) (noting that a municipal "government's demand for a public easement effect[s] a 'taking'"). For this reason, the Court rejects Plaintiff's view, (Doc. No. 33 at 2). that they do not seek anything that would amount to a taking of Defendants' property.

in the public to use the land for purposes for which it was dedicated." *Johnson*, 1993 WL 310368, at *3. And so, as Plaintiff correctly notes, (Doc. No. 33 at 2), Clay Cassidy's declaration and attached valuation are geared towards assessing the value based on a complete taking of Landfill Road, rather assessing the value based on what Plaintiff really seeks: mere continuation of the (alleged, but undisputed in any event) longstanding public use of Landfill Road. That is, these documents are intended to support Defendants' assertion that "[t]he value of Landfill Road [by itself or at least when combined with] the costs of Defendants' business interferences 'more likely than not' exceed $75,000." (Doc. No. 32 at 2). But the value of Landfill Road is not at issue; what is at issue is the value of an easement over Landfill Road in favor of the public.

As for the declaration of William McWherter, he addresses what the financial effect would be on Defendants if Defendants "lose access to Landfill Road," specifically, the cost of moving a soil pile or finding a new one (Doc. No. 32-3 at 1). But having Defendants "lose access to Landfill Road" is simply not within the scope of the object of the litigation, i.e., what Plaintiffs are requesting. Relatedly, he concludes that there would be (dire) financial impact "if Landfill Road becomes a public road with unlimited public access." (*Id.* at 2). But Plaintiff alleges that Landfill Road is already (and long has been) subject to "unlimited public access," at least for the limited purpose of accessing Rutherford County Landfill. Plaintiff has a point when it notes that "Defendants do not explain how this dire and expensive consequence never arose during years of public use but will suddenly arise from the City's continued limited use." (Doc. No. 33 at 2).

Given the relatively limited scope of Plaintiff's requested relief, and Defendants' failure to address the financial effects of that particular limited relief, the Court simply cannot say that the object of the litigation—which the Court perceives as a declaration acknowledging that Landfill Road is a road *accessible to and open for use* by the public, as opposed to a road *owned* by the

public—places more than $75,000 in controversy. Again, based on the allegations of the complaint (which the Court must accept as true and the core ones of which Defendant does not dispute in any event via its filed declarations or its briefing),[10] what Plaintiff seeks is a declaration that merely acknowledges what is already the case and would not change anything to Defendants' financial detriment; Plaintiff seeks nothing that would cause Defendant to have its property completely taken, or cause interference with Defendants' operations to any extent beyond any interference that already exists irrespective of the proposed declaration and corresponding injunction.

CONCLUSION

In opposing remand, Defendants start behind the metaphorical eight ball given applicable legal standards, which are not favorable to removal in cases of any doubts about its propriety. Given what Plaintiff does and does not allege, and does and does not seek in its Complaint, and given what Defendants do not address in their declaration, the Court cannot find that Defendants have met their substantial burden of showing that the amount in controversy here exceeds $75,000. Accordingly, the Motion (Doc. No. 26) is **GRANTED**.

The Clerk is directed to REMAND this case to Rutherford County Circuit Court.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRCT JUDGE

---

[10] To the Contrary, Defendants admit that Rutherford County has a right-of-way over what is known as Landfill Road. (Doc. No. 32 at 3). And the Court does not see where Defendants dispute that the ROW has always (until very recently in confrontation with Plaintiff's agents) been appropriately treated as a ROW not just for agents of Rutherford County but also for the public as a whole, including Plaintiff's agents.